City Select Auto Sales v. David Randall Associates Mr. Kello Thank you for your support, Judge. We would request, if it's alright, five minutes rebuttal. Corrected. This is an appeal of the case brought under the Telephone Consumer Protection Act, or the TCPA. We represented the plaintiff and the certified plaintiff class. We had previously obtained summary judgment against the corporate entity, David Randall Associates, and we are proceeding to trial against the remaining defendant, the individual previous owner and president of the company, Mr. Miley. Based on pretrial stipulations, as well as the evidence that came in, it was essentially undisputed that Mr. Miley had a role in sending these faxes. He authored the content, he decided upon the destination zip codes, he decided upon the days they would be sent, he authorized the transmissions, he requested and issued the checks, all these things that only he had the authority to do. Early in the trial, the court indicated it was going to give a summary of the law to the jury before we did opening statements, and that was when the issue first arose about how the court would describe Mr. Miley's potential liability. It was discussed at that time whether we were saying that Mr. Miley was a quote-unquote sender within the meaning of the TCPA, or alternatively were we arguing simply that based on common law principles of individual corporate officer liability that he could be held liable if he had direct personal participation or personally authorized. Wasn't that how you alleged it in your complaint, where you said he approved, authorized, and participated? Yes. Wasn't that the theory you embraced, actual participation? It was, and we stood by that at the beginning of the trial when the court asked. There was a dialogue in the record where counsel for Appalachia argued that we would have to prove Mr. Miley was the sender. It was a discussion had, and the court agreed that we could proceed on an individual corporate officer common law theory.  The verdict forum embraced the theory in total. It just laid out exactly what cases for decades and decades across all of the federal common law have provided about that. Do you find that Mr. Miley directly, personally participated? Alternatively, do you find that Mr. Miley personally authorized? It was a glitch. Now, either it was a proper glitch or it wasn't, but where the glitch arose was in the earlier instructions where the court told the jury, and this was a combination of instructions 17 and 18, and we had not appealed 17, but there was a reason. 17, the court inserted in the earlier draft that we would have to prove that Mr. Miley had a, quote-unquote, high degree of involvement. And we felt that the court was drawing that from the FCC's rule creating broadcaster liability. Only if the broadcaster could be shown to have had a, quote-unquote, high degree of involvement in the broadcasting, which the FCC then went on to describe what some of those kinds of activities might be that would suffice to constitute high degree. And we argued that you're taking apples and oranges. You're pulling from a very narrow thing where the FCC was talking about. So the district judge instead said, I'll use the word significant. Exactly, and we weren't satisfied with that either, but we had a dialogue with the court, and we understood what the verdict form would say, and we were satisfied with the verdict form. So I said, he said, what if I put as here and after defined or described? And I felt that tied into the verdict form. I felt that would be sufficient, and we said, okay. We still objected to instruction 18 for its additional discussion of that it had to be knowing and that he had to know he was engaged in fax advertising. How could that be inconsistent, though, with your theory? Your theory was he was actually participating, and one only can actually participate and authorize if they know they're doing it. One of the concerns I would have about what Your Honor just said is we don't have that requirement for a sender. A sender doesn't have to understand. Otherwise, you'd have a situation where you've got a fax broadcaster and they're going to do fax advertising, and they sent the entity whose goods and services are going to be advertised. They send them a request. Do you want to do advertising with us? And if you read it carefully, it's clear to anybody that it embraces fax advertising, but they don't read it carefully, or at least later in trial they claim they didn't. And they send that back saying, yes, and here's my check, and it goes out as fax advertising. And then the advertising entity is sued, and they say, but we didn't know. Does that mean they're not a sender? What's the definition of sender under the statute? The statute doesn't define it. Okay, right. So what does the FCC say? In the 2006 amended regulation, they define it in the alternative. One is the entity on whose behalf the fax advertising was sent, which the FCC has subsequently or additionally described as the author or originator of the fax. The alternative, second prong of the regulation, provides the entity whose goods or services are advertised in the fax. And who is the entity on whose behalf these fax were sent? And who is the entity whose goods were sold? Starting with the second prong and Your Honor's second question, clearly it was David Randall Associates' goods and services that were advertised. On whose behalf? We would argue, and we did in our supplemental brief requested by the court, that that would be both David Randall Associates and at the time its owner, Mr. Miley. What percentage of the business that was gained by David Randall and Associates was diverted to the personal account of Miley? We did not have evidence one way or another of that. So how could any of it be for his personal benefit? The record is replete, isn't it, that David Randall and Associates got a lot of business from this scheme, and it seems obvious that that's why they re-upped for two more rounds of the faxing. So David Randall and Associates was getting a lot of business. It was getting responsive communication and business. And that business was paid into its corporate account, it paid its corporate taxes, it paid its salaries, expenses, et cetera. So why wasn't everything done on behalf of David Randall and Associates? I would caveat my answer to that with that we did not proceed on sender theory at trial. So in response to the court's question and request for supplemental brief request. So he's not liable as a sender? We do believe, in response to the court's supplemental brief request, we articulate we believe he is the originator of the fax, and we believe that he is the source of the offending behavior, which is what the 11th Circuit in Saras talked about. The TCPA tries to place culpability and responsibility at the source of the offending behavior, and it was him in all respects. Why should we hold – he was the president of the company, wasn't he? And the owner. And a 39 percent owner? With his wife owning almost all of the rest, and the reason for it being for minority opportunities in the industry. In other words, he and his wife own the company. Okay, so it's basically a classic mom-and-pop business, but it is a corporation. Correct. With so many federal statutes, I could go through them. I don't want to be tedious. Clean Water Act, Clean Air, a whole bunch of federal statutes specifically impose civil liability on officers, directors, other individual actors of corporations. This statute doesn't. Why shouldn't we conclude that Congress well knows how to place individual liability on officers, directors, et cetera, and it didn't do so in the TCPA? I guess the response would be that in other federal statutes that do not specifically articulate that they are imposing individual corporate officer liability, individual corporate officer liability has been found, such as under certain sections of the Lanham Act, which is another thing we discussed in our supplemental brief, in distinguishing the Cullen case, which was also under the Lanham Act, but a very, very narrow provision of the Lanham Act. So you have the same statute, the Lanham Act, with some subsections that have been held to reach individual corporate officer liability because they speak of any person who does this. And then you have the Cullen subsection, which was the seizure remedy subsection, which was so narrowly drawn, an applicant was so narrow, and the logical application of it required narrow construction. Why shouldn't we read sender in paramaterial with applicant? It's referring to a type of person, and we know that under 1 U.S.C. 1 corporations are defined as persons as well. So I'm not sure I appreciate the clear distinction between applicant on the one hand and sender on the other, particularly when you've got the FCC's definition of sender on whose behalf it was sent. My time is up. May I answer the question? Sure. If the TCPA simply read sender shall be liable for unsolicited fax advertisements, and then the FCC defines sender, we might be in a narrower scenario more similar to the Cullen applicant because all Cullen in that section talked about was the applicant. So then the question from the statutory language flowed from the question, Congress talked about the applicant. What is that? In the TCPA statute they use the term sender, but they use it in a way without, it just is the offshoot of the initial language, which says any person who sends an unsolicited fax advertisement shall be liable. Then they talk about the sender, the sender, referring back to any person. It's the FCC that then proposed and purported to define sender for enforcement purposes, and the question for the court today I think is, is the FCC's definition so narrowing of the any person language in the statute that it falls more into the Cullen role, or is there room for broader liability? And what we would say is if in fact the FCC's definition of sender was that effectively narrowing, then there's no explanation for the FCC's creation of additional potential liability for fax broadcasters, even though they do not meet the definition of sender, as long as they had a quote-unquote high degree of involvement. So either the FCC exceeds its jurisdiction in creating broadcaster liability for a high degree of involvement, or the parties that may be liable under the TCPA are not exclusively limited to the definition of sender. Thank you. Mr. Cullen, here you are with that. Mr. Fitzpatrick.  May it please the Court. There is no statutory or case law support for the proposition that Raymond Miley could be held liable as a sender under these circumstances. No case law, no statutory support. If there were, it would appear certainly in counsel's brief. If there were any support for that proposition, we wouldn't be here, because the district court would certainly have imposed summary judgment against Mr. Miley, just as it did against the corporation. How could it? There was an issue of fact. That's my point. He couldn't have imposed a summary judgment. You had one witness who said he was actively involved. He had his denials that he wasn't. Correct. So it couldn't have been a summary judgment case. It could have been a sender argument, but you never raised a sender argument. Why not? Why did we not raise a sender argument? It was never seriously raised. We were faced with a complaint. The complaint charged conspiracy. We went to summary judgment. We filed a summary judgment motion because we knew they could never support the conspiracy claim. They didn't charge conspiracy. They charged each of them as a participant. Am I correct? Correct. They charged Raymond Miley with participating in a scheme to broadcast faxes. You can't participate in a scheme without a co-conspirator. That's a different theory of liability, though. Conspiracy, you tried to superimpose aiding and abetting in this case. That's not the theory that was charged. Those are different types of theories of liability. Exactly my point, Your Honor. What was charged in the complaint was conspiracy. We filed a motion for summary judgment, and the court knew the conspiracy would not fly. Plaintiffs' counsel knew conspiracy wouldn't fly, so they responded and said, no, no, interpret that as a vicarious liability claim. They implored the court in their response to our summary judgment motion to imply that that meant vicarious liability. Pardon me. The court on its own, sua sponte, said, no, we're going to imply a participation liability. That wasn't sua sponte. That's how it was alleged in the complaint. I don't read it that way, Your Honor, but at any rate, that's what came up, and that's what we went to trial on. The court said there are genuine issues of material fact as to that, and you will now go to trial individually on that. And that's what we faced. The test here, the applicable test, is on whose behalf. He could not be held liable directly, so you have to look to on whose behalf. That gets to the definition of sender, right? Correct. The FCC's definition of sender, which we need to defend the case on that basis. It doesn't mean we can't affirm for any reason. We can affirm for any reason supported by the record. I'm not trying to badger you with this, but I'm questioning my own evaluation of the sender definition, and maybe it wasn't raised because the other case law in this area didn't mention it either. I don't know. I can tell you it did not come up as a serious issue at any point that Raymond Miley individually would be construed to be a sender. That didn't come up. It was only vicariously. Was it a piercing the court with a veil? It was not raised until we moved for summary judgment, and for the first time the district court said we will imply paragraph 12 of the complaint to say not vicarious liability, but participation liability. That's the first time this was introduced in the case. So instead of granting us summary judgment, as I thought was appropriate, because there's no way Raymond Miley could be held responsible on a direct liability theory, the court in itself said vicarious liability. Nobody brought that up before. It was not in counsel's brief. It wasn't in any of the pleadings. So that's when that came up, and we went forward after that. On the assumption that he's either liable as a participant or not. Exactly. And the sole issue at trial was could they prove what they claimed, that he had such significant involvement in this matter that he could be held secondarily liable. And that's the third point that I want to make, is that this proposition that he could be held directly liable, if that were so, then this whole runaway body of law that we're here discussing today in our supplemental briefs that's been developed by the district courts and creative plaintiffs, saying imply a means of secondary liability in a statute that is silent, that wouldn't exist. Because if the courts were able to say that somebody like Raymond Miley, who, by the way, is not just the president, and he's not just a minority shareholder, and this is not just a mom and pop, there was another shareholder in this as well. Well, he and his wife have 90%. Agreed. Sounds a lot like a husband and wife family business. I just want to make that clear. Your Honor obviously is aware of the record. But this was also the culpable party here was a third-party fax broadcast company. David Raymond Associates is clearly a culpable party under the statute. Do you deny that? No, absolutely do not deny that. I should have used a different word. The actor that sent all these faxes was B2B. The arm on his behalf was David Randall Associates. Mr. Miley is a president and a minority shareholder. I'm just saying if there were any statutory or case law support for the proposition that as a corporate officer he's also a sender, there wouldn't be that body of case law that's developing. Let's talk about that case law. You keep characterizing it as secondary liability. Those cases are direct liability cases. They're not aiding and abetting. They're not conspiracy. They're not even vicarious liability cases. They are direct. And isn't it because the statute itself is viewed as codifying a type of tort, and when a tort is codified, we operate under the view that Congress knows about all the principles that govern tort law, including corporate officer liability. And so this group of district court decisions you've called runaway, aren't they all tethered to that theory of direct liability based upon it being a tort and the corporate officer is a tort user? Yes. I've read that rationale. Then why doesn't that demonstrate the district court here was correct in viewing the complaint as a direct liability case, articulating the elements in the jury instructions as being accurate? Why is that incorrect? It's incorrect because this court's holdings in the electronic labs case. That was an aiding and abetting case. Aiding and abetting, in this attorney's view, is the fundamental equivalent of a participation liability theory. The difference between it, and I'm happy to be corrected by my colleagues and by counsel, aiding and abetting is a circumstance where someone is helping someone else violate a law. The theory of this particular pleading was the plaintiff, sorry, Mr. Miley himself was violating the law, not that he was aiding somebody else. There are two different theories of liability, and that's why I'm not sure Colin advances your argument. But tell me why I'm mistaken. Is it just because you think aiding and abetting is similar to corporate officer liability? He was charged not with sending. He didn't press a button. He was charged. I don't see this as a charge of direct liability against Mr. Miley. He was charged with participating in a scheme. He obviously didn't do it himself. Corporate officers other than himself carried out all the communications with B2B and the corporation, not him. Let me ask you something. But the evidence as adduced, the jury applying that instruction, you still prevailed, right? We did, and I believe that that has to be deferred to. That jury verdict. We went forward on the personal participation theory, and the jury didn't buy it. For all of the reasons that I set forth at length in my brief. But I wish just because I didn't address your Honor's second part of that question. What Electronic Labs, Rittenhour, Central Bank stand for is the proposition that if the statute is silent, you can't imply this secondary liability. I'm using the term that the court uses, secondary liability. It means participation theory. It means vicarious liability. It's that whole slew of theories that are used to impose secondary liability. But as this court pointed out in Electronic Labs, we only do that in limited circumstances for serious matters. And in general, when courts have done it, it's only been with respect to things that are akin to criminal matters. This case involves a relatively trivial annoyance. That's what Congress established the TCPA. So triviality led to a $22 million judgment? It did. That's trivial? No, the amount of the judgment is not. But the damages at issue that this statute was designed to stop, the conduct, was sending of a fax. And the damage from any given fax, as many courts have acknowledged in dismissing conversion claims, are almost incalculable. What's a few grains of toner and a piece of paper and 20 seconds of your fax machine? But they wanted to stop the behavior, and that's why they imposed a $500 per violation penalty. And as many courts have noted, that that was really designed to let the individual victims have a decent return for their efforts to get it stopped. Not that it would be turned into $22 million judgments in class action cases. But what I'm saying is that this court, that thread, that rationale, does not support the proposition that Mr. Miley could be deemed to, that these faxes could be deemed to have been sent on behalf of Mr. Miley rather than the corporate entity. And I think that a case that well describes the... But again, that means he's not a sender, right? That's a separate argument you have. That's the argument the court flagged for counsel. That's not the one that you prevailed on at trial, correct? Correct. All right. Let's assume we don't go that way. What's your argument as to why the verdict should stand in light of the discrepancy, I think it's fair to call it a discrepancy, between the verdict sheet and the jury instructions? I don't see it as a discrepancy. I've never seen a verdict sheet that... The jury saw it as a discrepancy. They asked for clarification. They thought it was telling them... The instructions in the verdict sheet were telling them two different things, did they not? As I pointed out, I believe the jury was conscientiously adhering to the court's instructions and wanted to make sure that what they heard was the charge that the court gave them was the correct charge because on the verdict sheet, they only saw a summary of that charge. But every verdict sheet is just a summary of the charge. At best, it's a sentence of a charge that might have gone on for three pages. There was no... This jury verdict did not turn on any question about the nature of the charge that they were given and what they had to decide. It did not turn on semantics. It did not turn on the word significant. Then why did the jury ask the question? What was the language in the verdict form? What was the operative language in the verdict form? In essence... Do we have to find... I don't have it in front of me, I'm sorry. That's all right. Do you want me to read it? Yeah. Okay. The language was... It was repeated for each. And I'm reading for Appendix 320. Did Raymond Miley III have direct personal participation in the first unsolicited fax campaign? That was the question posed, and that's what led to the jury's question. Right. And that was different than the instruction, right? Didn't the instruction use the word significant? Significant, yes. It explained, as the judge said, its ordinary explanation of what that term means. He did not recite the whole charge again in the verdict sheet, but there's no substantive difference. They wanted to make sure that they were correctly hearing what they were supposed to decide upon. And the judge then reiterated to them that they did have to find that he had a significant level of personal involvement. And that is, in fact, the standard under federal common law interpretations that had been grafted onto this statute. And that's why the jury verdict has to be upheld, because there was no error in deciding that. Thank you, Mr. Kirkpatrick. Thank you. Mr. Cohen, is that all? You're on. When we sent the jury back to deliberate with that set of instructions, which we perceived to be inconsistent, I thought, just based on 25 years of doing it, either they're going to answer the verdict form as written and we're going to win, or they're going to, of their own accord, import the significance instructions into it and then maybe we win, maybe we don't, because who knows what level of, who knows how much they'll raise our burden of proof in light of that. What I did not anticipate was that after more than two hours of deliberation, we would get a question which was so insightful, I haven't seen a jury take the time to review instructions, compare it to the verdict form, and I recall saying to Judge Simandl, this is what I was concerned about. When Mr. Fitzpatrick says that in answering the jury's question and in the instructions themselves, all Judge Simandl was doing was giving the jury an explanation of the plain and common meaning of the terms in the verdict form, that's not what Judge Simandl himself thought he was doing. Judge Simandl, on the record, articulated his view that the terminology, the language in the verdict form, direct personal participation or personal authorization were terms of art that required additional explanation, and he expressed very clearly his view that if he didn't add the instructions about significant level, that he would be allowing the jury to return a verdict based on an unduly low burden of proof. So why is significant level clearly erroneous? I mean, why, what case, I mean, it's not the statute, right, because you're in the common law realm, so what's your best case support to show that the judge went astray there? Because the reason I'm asking the question, I'll show my hand here, is if there's not a case that directly told him not to do that, wasn't he in that uncharted water that a district judge often finds him or herself in where there's room for disagreement? Maybe he didn't have to say significant level, but even if he didn't have to say significant level, it doesn't mean it was wrong for him to say significant level. I would answer in a couple ways. Number one, Judge Samandel oversaw this case start to finish in one of the best ways I've seen a judge do. All of his orders are so carefully reasoned. The trial was an extraordinarily fair trial in everything we believe except this issue of instructions and the way it impacted the burden of proof in our view. And I do believe he found himself in what he perceived to be uncharted waters. I don't believe they were. I believe he created that. Now tell us what the chart says. What are the cases, you know, the buoys, the markers, what are they and why do they prove that he was wrong? We cite the Blossom case and I agree there are distinguishing features of it, but the Blossom case is where the plaintiff's attorney is talking about propoundings of the evidence and using the scales of justice and just describing one side's evidence has to be slightly more weighty than the other to prevail and the trial court interrupts him, says that's not true, instructs him not to repeat that, and then later gives an instruction which is the right language. It was a fair characterization of propoundings of the evidence, but the Court of Appeals held so was plaintiff's counsel's characterization and by telling the jury it wasn't, you impliedly said the burden of proof was something higher than that and our position would be if direct personal participation or personal authorization right there in plain common language for jurors to decide and apply if that is the right standard, then adding gloss language that suggests it's some higher version of that is increasing our burden of proof. But isn't just the use of the word significant simply a category to describe the two things you just identified and to also ensure that tangential or passive activity is not something that triggers liability? Isn't that all this instruction did? I would say no and my time's up. May I answer the question? Yes. Individual corporate officer liability under the common law is an attempt to place blame and allow liability to be placed not just on the corporate entity that is essentially vicariously liable for what the officer did, but for the only officer for the fact he's the actor within the company who did it. And I'm not aware of in the individual corporate officer liability common law of this additional requirement. Yes, we can hold the corporation liable for what you did, but to hold you liable for what you did, it has to rise to some more significant level. I'm not aware that the idea is the corporation can be held liable more easily for the individual officer's liability. The corporation could be held liable for Clemmer's activity, the office manager's activity, so you didn't need the officer involvement at all to hold the corporation liable. Except did Clemmer's liability rise to direct personal with Judge Simandl's additional loss of significant? Well, you can sue Clemmer, right. I agree, but what I'm saying is you end up with a situation hypothetically where no corporate officer. What you're suggesting is the corporation can be liable for the conduct of somebody who wouldn't rise to the level of an officer. And I don't believe the individual corporate officer liability standard and approach, although it's described as officer and it's usually used as a means to get to a president, a treasurer, or a director, it's merely an extension of the idea that when somebody who works for a corporation commits a tort, you can sue them and you can sue the corporation. And when we go up the chain to hire corporate officers and we say, oh, if you want to hold them liable, you've got to show something more significant. Yes, we can hold the corporation liable for what they did, but to hold them liable? And to respond to Your Honor's question, you could have a situation under what's being discussed. I'm not suggesting any of Your Honors is embracing it, but it's being suggested. You could have a situation where the corporation can clearly be held liable, but no individual in the company had enough involvement, enough participation, for any individual to be held liable. That turns, I believe, the concept of corporate responsibility for agent acts on its head. You can get the corporation, but you can't get the agent because no agent did quite enough. Our view is that the idea is you can not only get the corporation, you can get the person in the corporation who actually did it. Thank you. Thank you, Mr. Collins. Thank you to counsel for your argument. We'll take the matter under advisement.